1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   LANE BAULDRY,                              No. C 12-03943 CRB

12              Plaintiff,                       **ORDER GRANTING IN PART AND
                                                 DENYING IN PART MOTION TO**
13        v.                                     **DISMISS**

14   COUNTY OF CONTRA COSTA, et al.,

15              Defendants.
     _____/
16

17        Plaintiff Lane Bauldry ("Plaintiff") brings this action under 42 U.S.C. § 1983 and

18   California tort law, based on his arrest during a "Dirty DUI."  Defendants Sergeant Andrew

19   Wells  ("Sgt. Wells") and the City of Piedmont (collectively, "Defendants") filed this Motion

20   to Dismiss ("MTD") (dkt. 60), moving to dismiss all claims in Plaintiff's Second Amended

21   Complaint ("SAC") (dkt. 39).

22   **I.        BACKGROUND**[1]

23        Before October 2010, Defendants Christopher Butler and Stephen Tanabe agreed to

24   work together to effectuate a "Dirty DUI" scheme.  SAC ¶ 16.  Butler is a private

25   investigator and Tanabe is a deputy in the Contra Costa Sheriff's Office.  Id. ¶¶ 7, 8.  Butler

26   and Tanabe planned to set up unsuspecting husbands by plying them with alcohol and then

27   having them arrested when they drove under the influence.  Id. ¶¶ 16, 34.  Their wives would

28

_____

[1] The Court takes its account of the facts from the allegations in Plaintiff's SAC.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   then use the arrests against them in court proceedings.  Id.  Plaintiff was one of the husbands

2   set up by Butler and Tanabe.  See id.

3        In late 2010, Plaintiff's former wife, Mona Daggett, filed for divorce from Plaintiff in

4   Alameda County Superior Court.  Id. ¶ 17.  Daggett met with Butler in October 2010 in order

5   to hire Butler to effectuate the Dirty DUI involving Plaintiff.  Id. ¶ 19.  Daggett paid Butler

6   $600 at that meeting.  Id. ¶ 23.

7        Butler's initial attempt at the Dirty DUI occurred on October 21, 2010 and was

8   unsuccessful.  Id. ¶¶ 26-41.  Butler learned that Plaintiff would be at an Oakland, California

9   bar named Crogan's that night.  Id. ¶ 26.  Butler did not know any Oakland police officers

10  who would agree to arrest Plaintiff, so he asked Sgt. Wells of the Piedmont Police

11  Department to assist with the plan.  Id.  Butler hoped to entice Plaintiff to drink at Crogan's,

12  leave the establishment, and drive through Piedmont, where Sgt. Wells would then arrest

13  Plaintiff.  Id. ¶¶ 28, 33.

14       Butler, Tanabe, and others approached Sgt. Wells about the Dirty DUI plan before

15  October 21.  Id. ¶ 33.  Sgt. Wells had previously helped Butler coordinate unrelated events in

16  Piedmont.  Id. ¶ 31.  He knew that Butler was untrustworthy and unreliable.  Id. ¶ 32.  Sgt.

17  Wells agreed to be a part of the plan, telling Butler that he would be on duty and would be

18  willing to arrest Plaintiff for drunk driving.  Id. ¶ 33.  On October 21, 2010, Butler, Tanabe,

19  and two women went to Crogan's to effectuate the Dirty DUI, planning to have the two

20  women convince Plaintiff to drink excessively and then have Plaintiff drive them elsewhere.

21  Id. ¶ 36.  However, for reasons unknown to Plaintiff, the October 21 Dirty DUI attempt

22  ended prematurely.  Id. ¶ 36.  Sgt. Wells learned that the Dirty DUI scheme ended

23  unsuccessfully.  Id. ¶ 39.  He continued to keep the scheme a secret and did not take any

24  steps to stop the Dirty DUI.  Id.

25       Daggett met with Butler again on October 26, 2010 and learned that the first attempt

26  at arresting Plaintiff was unsuccessful.  Id. ¶ 42.  Daggett paid Butler another $600 so that

27  Butler could again try to have Plaintiff arrested.  Id.  On November 2, 2010, Plaintiff went to

28  Meenars, a bar located in Danville, California.  Id. ¶ 43.  Butler, Tanabe, and the two women

who had been present at Crogan's were also at Meenars.  Id. ¶ 44.  Defendant Tom Henderson, a Deputy in the Contra Costa Sheriff's Department, had previously agreed to make the arrest for the second attempt.  Id. ¶¶ 9, 48.  Henderson knew that the call about the DUI would not go through dispatch and that the purpose was inappropriate and illegal.  Id. ¶ 49.  He waited outside Meenars for Plaintiff to return to his car, at which point he pulled Plaintiff over and arrested Plaintiff for driving under the influence in violation of California Vehicle Code Sections 23152(a) and (b).  Id. ¶ 52.

The arrest was reported to Alameda County Superior Court and used to restrict Plaintiff's time with his daughter.  Id. ¶ 55.  The District Attorney's office either never brought or dismissed the criminal charges.  Id. ¶ 57.

Plaintiff filed suit on July 26, 2012.  See Original Compl. (dkt. 1).  Sgt. Wells and Piedmont filed a Motion to Dismiss on October 8, 2012, which Judge Illston granted with leave to amend.  See MTD (dkt. 15); Order (dkt. 28).  Plaintiffs then filed a First Amended Complaint ("FAC") on December 6, 2012, see FAC (dkt. 33), and an SAC pursuant to the joint stipulation of all parties on January 4, 2013.[2]  The SAC contains nine Federal and State claims: (1) Bad Faith Arrest in violation of 42 U.S.C. § 1983 against Sgt. Wells and Piedmont; (2) Bad Faith Arrest in violation of 42 U.S.C. § 1983 against Butler and Tanabe; (3) Conspiracy to Commit Bad Faith Arrest in violation of 42 U.S.C. § 1983 against Daggett, Butler, Tanabe, Henderson, Sgt. Wells, Contra Costa County, and Piedmont; (4) Egregious Official Conduct Intended to Injure Unjustified by Any Governmental Interest in violation of 42 U.S.C. § 1983 against Sgt. Wells, Piedmont, Tanabe, and Henderson; (5a)[3] Conspiracy to Commit Egregious Official Conduct Intended to Injure Unjustified by Any Governmental Interest in violation of 42 U.S.C. § 1983 against Daggett, Butler, Tanabe, Henderson, and Sgt. Wells; (5b) False Arrest and Imprisonment against Daggett, Butler, Tanabe, Henderson,

---

[2] Plaintiff calls both the First and Second Amended Complaints "Amended Complaint."  The Court will call the amended complaint filed on December 6, 2012 the First Amended Complaint and the complaint filed on January 4, 2013 the Second Amended Complaint.

[3] Plaintiff misnumbered his claims, calling two different claims "Fifth Claim for Relief."  The Court refers to these claims as the "fifth(a)" and "fifth(b)" claims.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  Sgt. Wells, Contra Costa County, and Piedmont; (6) Abuse of Process against Butler,

2  Tanabe, Henderson, Sgt. Wells, Contra Costa County, and Piedmont; (7) Intentional

3  Infliction of Emotional Distress against Daggatt, Butler, Tanabe, Henderson, Sgt. Wells,

4  Contra Costa County, and Piedmont; and (8) Negligence against Daggett, Butler, Tanabe,

5  Henderson Sgt. Wells, Contra Costa County, and Piedmont.  See SAC.

6       Defendants Sgt. Wells and Piedmont again move to dismiss all claims against them

7  under Federal Rule of Civil Procedure 12(b)(6).  See MTD.[4]

8  ## II.    LEGAL STANDARD

9       A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims

10  alleged in a complaint.  Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).

11  Under Federal Rule of Civil Procedure 8(2), a complaint must contain a "short and plain

12  statement of the claim showing that the pleader is entitled to relief." "Detailed factual

13  allegations" are not required, but the Rule does call for sufficient factual matter, accepted as

14  true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662,

15  678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)).

16  According to the Supreme Court, "a claim has facial plausibility when the plaintiff pleads

17  factual content that allows the court to draw the reasonable inference that the defendant is

18  liable for the misconduct alleged." Id. at 678.  In determining facial plausibility, whether a

19  complaint states a plausible claim is a "context-specific task that requires the reviewing court

20  to draw on its judicial experience and common sense." Id.

21  ## III.    DISCUSSION

22       Defendants move to dismiss on the following grounds: (A) Plaintiff does not allege a

23  conspiracy involving Sgt. Wells, and even if he did, Sgt. Wells was not a part of the second

24  conspiracy that resulted in Plaintiff's arrest; (B) state law immunities bar Plaintiff's state

25  claims against Sgt. Wells and Piedmont; (C) Plaintiff did not adequately plead the Federal

26  "direct action" claims against Defendants and the Monell doctrine bars all Federal claims

27

28

---

[4] Only Sgt. Wells and Piedmont brought this MTD.

4

against Defendants; and (D) Plaintiff did not allege facts sufficient to support a claim for punitive damages.[5]

## A.    Conspiracy

The previous order issued by Judge Illston granted Sgt. Wells's last motion to dismiss because Plaintiff failed to allege any agreement by Sgt. Wells to participate in the conspiracy or action by Sgt. Wells in furtherance of the conspiracy.[6]  Order (dkt. 38) at 4.  Defendants again argue that Plaintiff fails to state a claim for conspiracy.  First, they argue that Sgt. Wells did not agree to participate or actually participate in a conspiracy.  Second, they argue that Plaintiff alleges two separate conspiracy schemes, instead of one ongoing conspiracy. Because Plaintiff alleges Sgt. Wells's participation in one conspiracy, the MTD is denied with respect to the third, fifth(a), fifth(b), sixth, and seventh claims.

### 1.    Plaintiff Alleges that Sgt. Wells Agreed to Participate in the Conspiracy for the Common Purpose of Arresting Plaintiff in Order for the Arrest to Be Used Against Plaintiff in Family Court Proceedings

To plead a civil conspiracy under § 1983, Plaintiff must show "an agreement or 'meeting of the minds' to violate constitutional rights."  Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (quoting United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41(9th Cir. 1989)).  A complaint must be pled with sufficient particularity to show a meeting of the minds.  Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998); Burns v. Cnty. of King, 883 F.2d 819, 821 (9th Cir. 1989).  Each participant does not need to know each detail of the conspiracy but all must share a common objective.  United Steelworkers, 865 F.2d at 1541; Fonda v. Gray, 707 F.2d 435, 438 (9th Cir. 1983) (no common objective shown when bank turned over individual's bank records to FBI without knowing that FBI's goal

---

[5] Defendants also argued initially that Plaintiff amended his first, third, and fourth claims beyond the permissible scope of amendment.  MTD at 4.  However, Defendants subsequently conceded that this argument was in error.  Reply at 3.

[6] The complaint alleged that Sgt. Wells "expressly or tacitly agreed to the plan, failed to stop, impede, or report Butler's activities being taken against members of the public and thus failed to stop the Dirty DUI scheme."  Original Compl. ¶ 25.

1    was to end individual's political speech).  Circumstantial evidence may show participation in

2    a conspiracy.  Gilbrook v. City of Westminster, 177 F.3d 839, 856-57 (9th Cir. 1999).

3         California law is similar.  See Applied Equip. Corp. v. Litton Saudia Arabia Ltd., 7

4    Cal. 4th 503, 510-11 (1994) (a conspiracy "imposes liability on persons who, although not

5    actually committing a tort themselves, share with the immediate tortfeasors a common plan

6    or design in its perpetration").  A plaintiff must prove three things: "(1) the formation and

7    operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3)

8    damages arising from the wrongful conduct."  Kidron v. Movie Acquisition Corp., 40 Cal.

9    App. 4th 1571, 1581 (1995).  "Tacit consent as well as express approval will suffice to hold a

10   person liable as a coconspirator."  Wyatt v. Union Mortg. Co., 24 Cal. 3d 773, 785 (1979).

11        Plaintiff sufficiently alleges Sgt. Wells's involvement in the conspiracy.  Plaintiff

12   alleges that Butler and Tanabe agreed to a scheme that entailed encouraging husbands

13   undergoing divorce proceedings to drink alcohol and then drive, at which point a uniformed

14   officer would arrest the husband for driving under the influence.  SAC ¶ 16.  Plaintiff defines

15   this as a "Dirty DUI scheme."  Id.  Plaintiff then alleges that Butler and Tanabe approached

16   Sgt. Wells and informed him of the Dirty DUI scheme.  Id. ¶ 33.  Sgt. Wells agreed to the

17   plan, by saying he would be on duty the night of October 12, 2010 and able to carry out the

18   arrest of Plaintiff.  Id.  As alleged by Plaintiff, Sgt. Wells did not agree to simply arrest

19   Plaintiff on the night in question, or to arrest him if there was probable cause for doing so;

20   rather, Plaintiff alleges that Sgt. Wells agreed to participate in the "Dirty DUI scheme,"

21   therefore assuming the purpose of arresting Plaintiff so that the arrest could be used in family

22   court proceedings.  See id. ¶¶ 16, 33.

23        Moreover, the SAC also pleads the agreement between Sgt. Wells and the other

24   Defendants through circumstantial evidence.  Plaintiff alleges that Butler needed an officer to

25   arrest Plaintiff and that he approached Sgt. Wells because he did not have a contact within

26   the Oakland Police Department, the jurisdiction where Plaintiff was drinking on the night of

27   the first attempt.  SAC ¶¶ 28, 30.  Butler and Tanabe were able to move forward with the first

28

United States District Court
For the Northern District of California

6

1  Dirty DUI attempt in reliance on Sgt. Wells's participation, as their potential success was

2  contingent on the participation of an arresting officer.  See id. ¶ 26.

3                    **2.      Plaintiff Alleges a Single Conspiracy**

4          Defendants urge this Court to find that there were two separate conspiracies alleged:

5  first, an unsuccessful conspiracy to arrest Plaintiff on the night of October 21, 2010 at

6  Crogan's, and second, a successful conspiracy to arrest Plaintiff on the night of November 2,

7  2010.  MTD at 11.  Defendants do not cite a single case in favor of their argument.  Drawing

8  all reasonable inferences in favor of the Plaintiff, see Iqbal, 556 U.S. at 678, this Court

9  DENIES the MTD with respect to the conspiracy claims because Plaintiff adequately pled

10 that the arrest of Plaintiff was the product of a single conspiracy.

11         A defendant's "liability [for a conspiracy] continues until the objectives of the

12 conspiracy are completed, or the defendant withdraws from the conspiracy."  In re TFT-LCD

13 (Flat Panel) Antitrust Litig., 820 F. Supp. 2d 1055, 1059 (N.D. Cal. Sept. 26, 2011)

14 (collecting cases); see also United States v. Recio, 371 F.3d 1093, 1096 (9th Cir. 2004) (a

15 "conspiracy continues until there is affirmative evidence of abandonment, withdrawal,

16 disavowal, or defeat of the object of the conspiracy"); People v. Leach, 15 Cal. 3d 419, 431

17 (1975).  "To withdraw from a conspiracy a defendant must either disavow the unlawful goal

18 of the conspiracy, affirmatively act to defeat the purpose of the conspiracy or take 'definite,

19 decisive, and positive' steps to show that the [defendant's] disassociation from the

20 conspiracy is sufficient."  United States v. Lothian, 976 F.2d 1257, 1261 (9th Cir. 1992).

21          When determining whether there is a single conspiracy or multiple conspiracies, "the

22 question is what is the nature of the agreement."  United State v. Varelli, 407 F.2d 735, 742

23 (7th Cir. 1969).  "Various people knowingly joining together in furtherance of a common

24 design or purpose constitute a single conspiracy."  Id.  In contrast, separate agreements

25 between individuals and a common conspirator to achieve distinct ends indicates multiple

26 conspiracies.  See id.  The standard is similar under California law.  People v. Jasso, 142

27 Cal. App. 4th 1213, (2006) (defendant's attempted importation of drugs on three occasions,

28

using three women, did not convert single conspiracy into multiple conspiracies when attempts had the same modus operandi and occurred in close temporal proximity).

Taking the allegations in the light most favorable to the Plaintiff, the SAC alleges one overarching Dirty DUI scheme, rather than two separate conspiracies. Throughout both arrest attempts, the Dirty DUI plan and the objective of the parties remained the same: to set up Plaintiff for a DUI and to use that DUI against him in family court proceedings. SAC ¶¶ 20, 23, 42. Each attempt involved the same parties: Butler, Tanabe, Daggett, the two women, and Plaintiff. Id. ¶ 36, 44. Only the identities of the officers involved changed. Sgt. Wells made no effort to withdraw from the conspiracy at any point, id. ¶¶ 40, 41, and the objectives of the conspiracy were obtained when Plaintiff was arrested on November 2 and the arrest was used against him. When Sgt. Wells agreed to arrest Plaintiff during the unsuccessful first attempt, he agreed to participate in the "Dirty DUI scheme," see SAC ¶ 33, which ended upon complete of the conspiracy's objective.

Defendants argue that Daggett's second payment of $600 and Sgt. Wells's lack of knowledge of and participation in the second attempt preclude his involvement in the conspiracy. MTD at 11. However, conspirators can be liable without participating in every detail of the conspiracy. See Beltz Travel Svc., Inc. v. Int'l Air Transp. Ass'n, 620 F.2d 1360, 1366-67 (9th Cir. 1980); United States v. Aron, 463 F.2d 779, 780 (9th Cir. 1972). Additionally, Daggett discovered that the Crogan's attempt was unsuccessful at her meeting with Butler on October 26. SAC ¶ 42. She could have terminated the conspiracy at that point but instead made a second payment to Butler of $600 to continue his efforts to arrest Plaintiff. Id. That she paid Butler the same price for the second attempt as she did for the first also suggests that his work on the second attempt was nearly identical to his previous work.

Additionally, the facts do not support Defendants' contention – in briefing and at oral argument – that the conspiracy ended when the first attempt to arrest Plaintiff failed. Plaintiff alleges that "something caused the co-conspirators at Crogan's to abort the plan" and that Sgt. Wells "learned of and was advised that the scheme he had agreed to assist in at

1   Crogan's had been aborted." Id. ¶¶ 37, 38.  However, taking the facts in the light most

2   favorable to Plaintiff, Plaintiff did not allege that the conspiracy ended at this point or that

3   Sgt. Wells withdrew from the overall conspiracy.  Instead and as discussed above, Plaintiff

4   alleges that this was merely a failed attempt to carry out the overall objective of the

5   conspiracy, of which Sgt. Wells was still a part.  See id. ¶ 16, 33.

6       This Court denies the MTD with respect to the state and federal conspiracy claims

7   against Sgt. Wells and Piedmont.

8       **B.     Application of State Law Immunities**

9       Before addressing whether state law immunities apply to Sgt. Wells and Piedmont,

10  this Court must first address whether Sgt. Wells owed a duty to Plaintiff.  See Williams v.

11  California, 34 Cal. 3d 18, 23 (1983) (the "question of duty is . . . a threshold issue, beyond

12  which remain the immunity barriers.").  This is because the court must first determine that a

13  plaintiff would be liable before state law immunities would apply.  Davidson v. City of

14  Westminster, 32 Cal. 3d 197, 201-02 (1982).  Judge Illston's previous order did not address

15  state law immunities because Plaintiff's Original Complaint did not allege that Sgt. Wells

16  owed Plaintiff a duty.  Order at 5.  However, Judge Illston suggested that a special

17  relationship (and, therefore, a duty) might be created between Plaintiff and Sgt. Wells if the

18  conspiracy was adequately pled.  Id.

19          **1.     Sgt. Wells Had a Duty to the Plaintiff**

20      Based on the sufficiently pled conspiracy involving Sgt. Wells, this Court holds that

21  Plaintiff alleged that Sgt. Wells owed Plaintiff a duty to warn him of the Dirty DUI set up.

22      Generally, one does not owe a duty to control the conduct of another or to warn those

23  endangered by another's conduct.  Von Batsch v. Am. Dist. Telegraph Co., 175 Cal. App. 3d

24  1111, 1121 (1985); Davidson, 32 Cal. 3d at 203.  However, a special relationship, giving rise

25  to a duty of protection or assistance, might be created by an officer's words or conduct.  See

26  M.B. v. City of San Diego, 233 Cal. App. 3d 699, 704-05 (1991).  "Liability may be imposed

27  if an officer voluntarily assumes a duty to provide a particular level of protection, and then

28  fails to do so [citations omitted], or if an officer undertakes affirmative acts that increase the

United States District Court
For the Northern District of California

risk of harm to the plaintiff." <u>Zelig v. Cnty. of Los Angeles</u>, 27 Cal. 4th 1112, 1129 (2002); <u>Wallace v. City of Los Angeles</u>, 12 Cal. App. 4th 1385, 1396 (1993) ("when the government's actions create a foreseeable peril to a specific foreseeable victim, a duty to warn arises when the danger is not readily discoverable by the endangered person"); <u>Johnson v. California</u>, 69 Cal. 2d 782 (1968) (duty to warn found when the California Youth Authority placed a minor with foster parents without warning them that he had homicidal tendencies).  At least one court has recognized that a duty may arise based on a conspiracy that places the victim in harm's way.  <u>See</u> <u>Hernandez v. City of Napa</u>, 781 F. Supp. 2d 975, 1005 (N.D. Cal. 2011).

As suggested in Judge Illston's previous order, the Dirty DUI conspiracy placed Plaintiff in a position of harm, thus creating a special relationship between Sgt. Wells and Plaintiff.  Order at 6.  The DUI conspiracy involving Sgt. Wells culminated in Plaintiff's arrest for drunk driving, and the subsequent use of that arrest against him in family court.  SAC ¶ 55.  As Sgt. Wells was a member of the conspiracy that planned and effectuated Plaintiff's arrest, he contributed to Plaintiff's risk of harm, which resulted in a duty to warn Plaintiff of the set up.  Additionally, Defendants do not contest that Sgt. Wells's involvement in a conspiracy would create a duty to Plaintiff.  <u>See</u> MTD at 17.

As a duty existed, the Court looks to whether the state law immunities apply.  <u>See</u> <u>Williams</u>, 34 Cal. 3d at 22.

### 2.    State Law Immunities Do Not Apply to Plaintiff's State Claims

A public entity is not liable for injury caused by an employee if the employee is immune from liability.  Cal. Gov't Code § 815.2.  When considering the state immunities, the Court may consider their application to the claims for abuse of process, negligence, and intentional infliction of emotional distress.  <u>See</u> <u>Richards v. Dept. of Alcoholic Beverages Control</u>, 139 Cal. App. 4th 304, 311 (2006) (applying section 820.2 immunity to an abuse of process claim); <u>Mann v. California</u>, 70 Cal. App. 3d 773, 778-79 (1977) (analyzing state immunities as applied to negligence claim); <u>Alicia T. v. Cnty. of Los Angeles</u>, 222 Cal. App. 3d 869, 882-83 (1990) (applying immunities to intentional infliction of emotional distress

claim). Immunity is not available to an officer for false imprisonment or false arrest claims. Cal. Gov't. Code § 820.4.

### a.   California Government Code section 820.2

Defendants argue that public employees, such as Sgt. Wells, are immunized under section 820.2 for injuries resulting from discretionary acts or injuries. Immunity is meant to protect basic policy decisions of public officials. Johnson v. California, 69 Cal. 2d at 793. Immunity ends after the basic policy decision has been made. Johnson v. Cnty. of Los Angeles, 143 Cal. App. 3d 298, 313 (1983).

A determination of whether section 820.2 applies also requires a determination of whether the officer's actions were discretionary or ministerial. McCorkle v. City of Los Angeles, 70 Cal. 2d 252, 260 (1969). The California Supreme Court employs a narrowed definition of "discretionary," recognizing that every act by an officer involves some level of discretion. See Johnson v. California, 69 Cal. 2d at 788-89, 794 n.8 ("to be entitled to immunity the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place"); McCorkle, 70 Cal. 2d at 261 (discretionary acts require "personal deliberation, decision and judgment") (internal citations omitted). Even if an officer's act is discretionary, he will not receive immunity "if the injury to another results, not from the employee's exercise of 'discretion vested in him' to undertake the act, but from his negligence in performing it after having made the discretionary decision to do so." McCorkle, 70 Cal. 2d at 261 (internal citations omitted). Multiple cases have found that immunity does not apply to discretionary acts of government officials that give rise to a duty to warn the public of impending danger. See, e.g., Johnson v. California, 69 Cal. 2d at 796; Johnson v. Cnty. of Los Angeles, 143 Cal. App. 3d at 313 (sheriffs not immunized in wrongful death action for failure to warn wife that husband, who posed known danger to himself, was released from custody).

The facts alleged by Plaintiff do not provide any reason to immunize Sgt. Wells from liability under section 820.2. As alleged by Plaintiff, Sgt. Wells was part of a conspiracy to arrest Plaintiff for driving under the influence. This conspiracy created foreseeable harm to

United States District Court
For the Northern District of California

Plaintiff.  See supra Part III.B.1.  There is no allegation that Sgt. Wells weighed the decision to enter into the conspiracy and determined that public policy justified his action.  Even if he did and his decision to enter into the conspiracy was discretionary, the duty to warn Plaintiff of the harm was not.  See Johnson v. California, 143 Cal. 2d at 796; Johnson v. Cnty. of Los Angeles, 143 Cal. App. 3d at 313.  In light of Plaintiff's allegations and the policy rationale behind statutory immunity, section 820.2 does not immunize Sgt. Wells from liability.

**b.      California Government Code section 845**

Similarly, section 845 provides immunity for the failure of a public entity or public employee to provide police protection.  Section 845 "was designed to prevent political decisions of policy-making officials of government from being second-guessed by judges and juries in personal injury litigation."  Mann v. California, 70 Cal. App. 3d 773, 778 (1977) "[E]ssentially budgetary decisions of these officials were not to be subject to judicial review in tort litigation."  Id. at 778-79; see also Zelig, 27 Cal. 4th at 1142 (section 845 immunity "is meant to protect the budgetary and political decisions which are involved in hiring and deploying a police force").  For example, immunity applied when police failed to provide sufficient security at fairgrounds even though gang violence was a known risk.  Turner v. California, 232 Cal. App. 3d 883, 894-85 (1991).

Here, Sgt. Wells is not immunized for the reasons discussed above.  Plaintiff's claims are not that Sgt. Wells failed to provide police protection; rather, the allegations are that Sgt. Wells entered into a conspiracy and helped to create the harm that befell Plaintiff.  Sgt. Wells's action was not based on budgetary limitations or a political decision.  Instead, his failure to act was based on his participation in the conspiracy.

**c.      California Government Code sections 818.2, 821, and 846**

Defendant also argues that California Government Code sections 818.2, 821, and 846 immunize Sgt. Wells.  Section 821 states that "[a] public employee is not liable for an injury caused by his adoption of or failure to adopt an enactment or by his failure to enforce an enactment."  Section 818.2 applies this same immunity to public entities for failure to enforce

12

United States District Court
For the Northern District of California

a law.  Section 846 immunizes public entities and employees for "injury caused by the failure to make an arrest or by the failure to retain an arrested person in custody."

Defendants cite <u>Michenfelder v. City of Torrence</u>, 28 Cal. App. 3d 202 (1972), in support of applying sections 818.2, 821, and 846.  In <u>Michenfelder</u>, Plaintiff alleged that officers were negligent because they were aware of trespassers who raided Plaintiff's store but failed to take police action.  <u>Id.</u> at 205.  In determining that the immunity statutes applied, that court specifically noted that the plaintiffs alleged only "wrongful inaction" against the officers, and not any "actual participation or express encouragement."  <u>Id.</u>  Unlike <u>Michenfelder</u>, Sgt. Wells helped <u>create</u> the harm through his conspiracy with the other defendants, and he had a duty to warn Plaintiff of the risk of harm.  He did not simply fail to arrest other defendants or fail to enforce a law.  Thus, sections 821, 818.2, and 846 do not immunize Sgt. Wells or Piedmont.

California Government Code section 820.2, 845, 818.2, 821, and 846 do not apply to the facts alleged.  As such, neither Sgt. Wells nor Piedmont are immunized from state liability.

### C.    Federal Claims

Defendants also move to dismiss Plaintiff's federal direct conduct claims against Sgt. Wells and Piedmont, arguing that they lack a factual basis.[7]  MTD at 15.  Plaintiff failed to address any of these arguments in his papers.  <u>See</u> Opp'n.  This failure can amount to a concession.  <u>See, e.g.</u>, <u>In re Online DVD Rental Antitrust Litig.</u>, No. 09-2029 PJH, 2011 WL 5883772, at *12 (N.D. Cal. Nov. 23, 2011) (absent unusual circumstances, failure to respond to argument on merits "viewed as grounds for waiver or concession of the argument").  However, this Court grants the MTD these claim on their merits.

//

---

[7] Defendants also move to dismiss the state law claims because Sgt. Wells was not involved in the second attempt to have Plaintiff arrested.  MTD at 16.  However, Plaintiff predicates the liability of Sgt. Wells and Piedmont on Sgt. Wells' involvement in the conspiracy.  In California, "a conspiracy cannot be alleged as a tort separate from the underlying wrong it is organized to achieve."  <u>Applied Equip. Corp.</u>, 7 Cal. 4th at 510-11.  Thus, Plaintiff's state law claims are properly pled in this regard.

1    **1.    Plaintiff Does Not Adequately Plead Bad Faith Arrest Against Sgt.
            Wells or Piedmont**

2        Plaintiff alleges that Defendants engaged in a "bad faith arrest" when Sgt. Wells and

3    the Piedmont Police Department "creat[ed] a danger for plaintiff that he otherwise would not

4    have been subjected to, and ultimately resulted in plaintiff's arrest which was unnecessary."

5    SAC ¶ 65.  However, Sgt. Wells did not execute Plaintiff's arrest and there is not any basis

6    for a bad faith arrest claim against an officer who did not arrest or detain an individual.

7        "Section 1983 imposes civil liability on an individual who 'under color [of state law] .

8    . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation

9    of any rights, privileges or immunities secured by the Constitution and laws.'" Franklin v.

10   Fox, 312 F.3d 423, 444 (9th Cir. 2002) (quoting 42 U.S.C. § 1983).  Claims for "bad faith

11   arrest" in violation of the Fourth Amendment are not frequently addressed by courts, but

12   courts have generally found that an arrest made with a warrant or with probable cause defeats

13   a claim for bad faith arrest under § 1983.  See Baker v. McCollen, 443 U.S. 137, 143-45

14   (1979) (holding that a plaintiff, arrested with a valid warrant, could not bring § 1983 claim);

15   Bretz v. Kelman, 773 F.2d 1026, 1031 (9th Cir. 1985) (stating that an arrest made in bad

16   faith may give rise to a § 1983 claim as an "illegal, unconstitutional arrest") (citing Guenther

17   v. Holmgreen, 738 F.2d 879, 883 (7th Cir. 1984)); Guenther, 738 F.2d at 883 (determining

18   that a plaintiff arrested without a warrant or probable cause may have a § 1983 claim).  Cases

19   generally address liability against the officers who either arrested or confined individuals.

20   See Baker, 443 U.S. at 143-45; Guenther, 738 F.2d at 883.

21       Here, Plaintiff does not allege facts that show that Sgt. Wells engaged in a bad faith

22   arrest.  In fact, Plaintiff alleges that Deputy Henderson, not Sgt. Wells, effectuated Plaintiff's

23   arrest on November 2, 2010.  SAC ¶ 52.  There are not any facts to suggest that Sgt. Wells

24   arrested Plaintiff and not any case law that would allow a bad faith arrest claim based on the

25   creation of harm to Plaintiff.  Plaintiff's first claim for bad faith arrest is dismissed without

26   leave to amend.

27   //

28

14

**United States District Court**
For the Northern District of California

1

2

### 2.   Plaintiff Does Not Adequately Plead Egregious Official Conduct Intended to Injure Unjustified by Any Government Interest Against Sgt. Wells or Piedmont

3    Defendants move to dismiss Plaintiff's fourth claim for Egregious Official Conduct

4   Intended to Injure Unjustified by Any Government Interest for failure to state a claim for

5   relief.  MTD at 15.  This Court grants the MTD as to this claim because Plaintiff alleges

6   action by Tanabe and Henderson, not Defendants.

7    The fourth claim is predicated on entrapment carried out by Tanabe and Henderson.

8   See SAC ¶ 70.  Even if Plaintiff pled sufficient facts, entrapment alone does not constitute a

9   substantive due process claim.  See United States v. Russell, 411 U.S. 423, 430 (1973)

10   (holding that a criminal defendant's constitutional rights were not violated because officers

11   entrapped him); Stokes v. Gann, 498 F.3d 483, 484-85 (5th Cir. 2007) (extending Russell to

12   § 1983 causes of action based on entrapment and citing other circuit courts that have done

13   the same).  Thus, in order for Plaintiff to have a substantive due process claim according to

14   § 1983, he must allege government action that rises to the level of "shock[ing] the

15   conscious."  See Rochin v. California, 342 U.S 165, 172-73 (1952); Cnty. of Sacramento v.

16   Lewis, 523 U.S. 833, 849 (1998) ("conduct intended to injure in some way unjustifiable by

17   any government interest is the sort of official action most likely to rise to the conscience-

18   shocking level"); Cooper v. Dupnik, 924 F.2d 1520, 1530 n.20 (9th Cir. 1991) (discussing

19   Rochin standard); United States v. O'Connor, 737 F.2d 814, 817 (9th Cir. 1984) (conduct

20   must be so shocking as to "violate the universal sense of justice").  Courts have held that

21   obtaining evidence by involuntary stomach pumping meets the "shocks the conscience"

22   standard, Rochin, 342 U.S. at 172-74, as does government agents "engineer[ing] and

23   direct[ing] a criminal enterprise from start to finish," United States v. So, 755 F.2d 1350,

24   1353 (9th Cir. 1985).

25    In his fourth claim, Plaintiff alleges that "the actions and behavior of Deputy Tanabe

26   and Deputy Henderson in entrapping Plaintiff via a Dirty DUI arrest constituted an abuse of

27   power."  SAC ¶ 70.  Plaintiff alleges only that Tanabe and Henderson arrested Plaintiff, and

28   does not allege any action by Sgt. Wells, including participation in the conspiracy, as the

basis for this § 1983 claim for egregious conduct.  <u>See id.</u> ¶ 16.  As there are no allegations as to Sgt. Wells or Piedmont, the claim is dismissed without leave to amend.

### 3. <u>Monell</u> Bars Federal Claims Against Piedmont and Sgt. Wells in his Official Capacity

This Court dismisses Plaintiff's <u>fourth claim</u> against Piedmont and the <u>third and fifth(a)</u> claims against Piedmont and Sgt. Wells in his official capacity because they are inadequately pled in light of the Supreme Court's decision in <u>Monell v. Dept. of Social Svcs.</u>, 436 U.S. 658 (1978).

Local governments cannot be held liable for the actions of their employees on the theory of <u>respondeat superior</u>.  <u>Id.</u> at 691, 694.  However, local governments cannot escape liability when the government's policy or custom causes the injury.  <u>Id.</u> at 694.  "For the government to be held liable on the basis of custom, there must be a pattern of 'persistent and widespread discriminatory practices of state officials' which became 'so permanent and well settled as to [have] the force of law.'"  <u>Doe v. Alameda Unified Sch. Dist.</u>, No. C 04-02672 CRB, 2006 WL 734348, at *5 (N.D. Cal. Mar. 20, 2006) (citing <u>Monell</u>, 436 U.S. at 691).  This same rationale applies to suits against officers in their official capacity.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 168 (1985) ("in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law") (internal citations omitted).

Plaintiff alleges the first, third, and fourth[8] claims against Piedmont and Sgt. Wells, in his official capacity, SAC ¶¶ 10, 65, 69, 70,[9] yet Plaintiff failed to plead any policy or custom of the City that created the injury to Plaintiff.  In fact, Plaintiff does not challenge that <u>Monell</u> bars his claims against Sgt. Wells in an official capacity and Piedmont.  <u>See</u> Opp'n.  Further, Plaintiff does not allege that a Dirty DUI scheme occurred multiple times in Piedmont or that multiple Piedmont officers were involved.  <u>See</u> SAC.  There was no city

---

[8] This Court dismisses the first and fourth claims in their entirety against Sgt. Wells and Piedmont for being insufficiently pled.  <u>See</u> <u>supra</u> Parts III.C.1 and 2.  Thus, this Court need only consider the <u>Monell</u> doctrine in relation to the third and fifth(a) claims, to the extent that Plaintiff alleges them against Piedmont and Sgt. Wells, in his official capacity

[9] Plaintiff alleges the fifth claim, Conspiracy to Commit Egregious Official Conduct Intended to Injury Unjustified by Any Government Interest against Sgt. Wells, although it is unclear if Plaintiff also intends this to be alleged against Sgt. Wells in his official capacity.  <u>Id.</u> ¶ 71.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

policy that officers help assist Butler in the set up; Sgt. Wells was the only Piedmont officer assisting with the Dirty DUI.  See id.  Further, Plaintiff does not allege that any other officer even knew about the Dirty DUI scheme.  Id.  As such, this Court dismisses the fourth claim against Piedmont and the third and fifth(a) claims against Sgt. Wells in his official capacity.

**D.    Punitive Damages**

Finally, Defendants move to dismiss Plaintiff's claim for punitive damages, citing both federal and state law.  In his Opposition, Plaintiff clarifies that the claim for punitive damages is brought pursuant to California Civil Code section 3294 only.  Opp'n at 19.

Section 3294 provides damages for when a Plaintiff proves, by clear and convincing evidence, "that the defendant has been guilty of oppression, fraud, or malice."  Malice has two possible definitions: (1) "conduct which is intended by the defendant to cause injury to the plaintiff"; or (2) "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others."  Cal. Civ. Code § 3294(c)(1).  Oppression is defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights."  Id. § 3294(c)(2).

Assuming the truth of the facts alleged in Plaintiff's SAC, this Court denies Defendants' MTD as to punitive damages.  When Daggett hired Butler, she intended to have Plaintiff arrested for driving under the influence so that she could use the arrest against him in divorce proceedings, therefore causing harm.  SAC ¶¶ 19-20.  Sgt. Wells agreed to participate in the "Dirty DUI scheme," which Plaintiff alleges included the common goal to have him arrested and to use that arrest against him in family court proceedings.  Id. ¶¶ 16, 33, 34.  As previously discussed, entering into the conspiracy caused harm to the Plaintiff.  See supra Part III.A.  As causing injury can be the basis for punitive damages under section 3294(c)(1), Plaintiff adequately pled a claim for punitive damages.

**IV.    CONCLUSION**

The Court DENIES the MTD as to the third, fifth(a), fifth(b), sixth, and seventh claims as to Sgt. Wells's participation in the conspiracy.  The Court also DENIES the MTD as to the applicability of state immunities.  The Court GRANTS the MTD without leave to

amend as to the first and fourth claims against Sgt. Wells and Piedmont for Bad Faith Arrest and Egregious Official Conduct Intended to Injure Unjustified by Any Governmental Interest.  The Court also GRANTS the MTD as to the fourth and fifth(a) claims against Sgt. Wells in his official capacity and Piedmont.  The Court DENIES the MTD as to punitive damages.

**IT IS SO ORDERED.**


Dated: April 23, 2013                              CHARLES  R. BREYER
                                                   UNITED STATES DISTRICT JUDGE