IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANE BAULDRY,<br><br>            Plaintiff,<br><br>    v.<br><br>COUNTY OF CONTRA COSTA, et al.,<br><br>            Defendants. | No. C 12-03943 CRB<br><br>**ORDER GRANTING MOTION FOR RECONSIDERATION AND GRANTING PARTIAL SUMMARY JUDGMENT** |

Following a limited remand of their consolidated appeals, Defendants Stephen Tanabe and Tom Henderson move the Court to reconsider its denial of summary judgment as to Plaintiff Lane Bauldry's Fourth Amendment claim, the related conspiracy claim, and the state wrongful arrest claim against Henderson. See Mot. (dkt. 198). The Court has carefully considered the parties' papers, finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), VACATES the hearing currently set for Friday, July 31, 2015, and GRANTS the motion. This course of action should come as no surprise to the parties, as the Court previously reconsidered its summary judgment ruling on the Fourth Amendment and related conspiracy claims in the Katz (Case No. 11-5771 CRB) and Aksu (Case No. 12-4268 CRB) cases, which presented strikingly similar facts. See generally Order Granting in Part Motions for Summary Judgment (dkt. 97 in Case No. 12-4268).[1]

---

[1] Indeed, this Order closely tracks that Order.

## I.  BACKGROUND

Tanabe and Henderson were, at all relevant times, deputy sheriffs employed with the Contra Costa County Sheriff's Office and assigned to the Danville Police Department. Tanabe Decl. (dkt. 150-4) ¶ 6; Henderson Decl. (dkt. 150-2) ¶ 2.

On November 2, 2010, Bauldry consumed four or five alcoholic beverages with two women at a bar in Danville. Bauldry Testimony (Levitskaia Decl. dkt. 150-3) at 736–37 ("So I had a beer, vodka, Red Bull, lemon drop. . . ."; "four or five" in total).[2] Tanabe observed Bauldry's alcohol consumption and verbally informed Henderson about it, about Bauldry's vehicle, and about Tanabe's belief that Bauldry would be driving while intoxicated. Tanabe Decl. ¶ 12 ("I personally witnessed plaintiff consume at least four or five alcoholic beverages"); ¶ 14 ("Based on my observations, I believed that if plaintiff was to drive his vehicle, he would be driving under the influence of alcohol"); ¶ 15 ("Christopher Butler and I located plaintiff's vehicle based on Christopher Butler's description of the vehicle"); ¶ 16–17 ("I called . . . Henderson . . . and told him . . . that plaintiff consumed alcohol to excess and I believed he would be driving intoxicated"; "I provided . . . Henderson . . . with the description and location of plaintiff's vehicle."). Tanabe and Henderson had previously worked together and Henderson believed that Tanabe was reliable and credible. Henderson Decl. ¶ 4. Tanabe next informed Henderson that Bauldry was leaving the bar. Tanabe Decl. ¶ 20; Henderson Decl. ¶ 4.

Henderson contacted Deputy Sheriff Robert Durrer about a possible DUI. Henderson Decl. ¶ 4. Henderson stopped Bauldry's car as it proceeded in his direction, id. ¶ 5, knowing that "there might be a drunk driver on the road," Henderson Depo. (dkt. 146-1) at 48. Henderson believed that the car, which looked like the one Tanabe had described, was

---

[2] In his declaration, Bauldry asserts that he only ordered beer and shared a lemon drop with the women, but he does not deny drinking heavily. See Bauldry Decl. (dkt. 159-1) at 3 ("We all drank alcohol and I would purchase[] 'rounds' for the women and myself. . . . I was encouraged and enticed by the woman to drink more than I otherwise would have, a different type of alcohol than I normally drank, and for a longer period of time than I normally would drink."). To the extent that this account contradicts Bauldry's testimony, Bauldry cannot create a genuine issue of material fact by contradicting his own previous sworn statement. See Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999).

traveling at approximately 35 m.p.h. in a 25 m.p.h. zone; he activated his radar cone, which confirmed that the car was traveling at 35 m.p.h. Id. at 51. Bauldry denies that he was speeding. Bauldry Decl. at 4 ("I did not exceed the speed limit."). For the purposes of summary judgment, the Court accepts Bauldry's assertion that he was not speeding.

As Henderson stopped Bauldry's car, Durrer arrived at the scene. Henderson Depo. at 62; Durrer Decl. ¶ 4. Henderson informed Durrer that he stopped the car for violation of California Vehicle Code section 22350, the basic speed law. Durrer Decl. ¶ 5. Durrer approached the vehicle and made contact with Bauldry. Id. ¶ 6. Durrer observed several signs of intoxication, including "bloodshot/watery eyes, odor of an alcoholic beverage, and slurred speech." Id. Bauldry stated that he had two beers with dinner. Id. Durrer asked Bauldry to exit his vehicle, and noticed that Bauldry swayed and staggered as he walked. Id. ¶ 7. Durrer conducted a series of Field Sobriety tests on Bauldry, and Bauldry performed poorly. Id. ¶ 8. Durrer arrested Bauldry for driving under the influence of alcohol. Id. ¶ 8. Durrer took Bauldry back to the Danville Police Department and administered two breath tests; Bauldry scored a .13% BAC on both. Id. ¶ 9.

There is no dispute that Henderson was tipped off by Tanabe that Bauldry was intoxicated, or that, when stopped, Bauldry was indeed intoxicated.

## II. LEGAL STANDARD

The Court can grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims." Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict" for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material if it could affect the outcome of the suit under the governing law. Id. at 248–49 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)). To determine whether a genuine dispute as to any material fact exists, the court must view the evidence in the light most favorable to the non-moving party. Id. at 255.

3

1   In determining whether to grant or deny summary judgment, it is not a court's task "to
2   scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275,
3   1279 (9th Cir. 1996) (internal citation omitted).  Rather, a court is entitled to rely on the
4   nonmoving party to "identify with reasonable particularity the evidence that precludes
5   summary judgment." Id.

**III.   DISCUSSION**

7   Tanabe moved for summary judgment in this case, arguing that first, he did not violate
8   Bauldry's Fourth and Fourteenth Amendment rights, and second, if he did, he is entitled to
9   qualified immunity. See generally Tanabe MSJ (dkt. 150).  Henderson and the County also
10  moved for summary judgment as to the Fourth and Fourteenth Amendment claims, the
11  conspiracy claims, and the various state law claims. See generally Henderson MSJ (dkt.
12  142).  The Court's ruling denying summary judgment as to the Fourteenth Amendment claim
13  and its related conspiracy claim, see Minutes (dkt. 167), remains unchanged.  The Court's
14  ruling denying summary judgment as to the Fourth Amendment and its related conspiracy
15  claim, as well as the state wrongful arrest claim as to Henderson, id., was, upon further
16  consideration, incorrect.

17  The Fourth Amendment guarantees "the right of the people to be secure in their
18  persons, houses, papers, and effects, against unreasonable searches and seizures." Whren v.
19  United States, 517 U.S. 806, 809 (1996).  An automobile stop qualifies as a seizure for the
20  purposes of the Fourth Amendment and must be reasonable under the circumstances. Id. at
21  810.  An arrest is also a seizure and must be reasonable under the circumstances. Ashcroft v.
22  al-Kidd, 131 S. Ct. 2074, 2080 (2011).

**A.   Reasonable Suspicion for Traffic Stop**

24  The Court finds that Henderson had reasonable suspicion to stop Bauldry's car in light
25  of Tanabe's tip.[3]

---

[3] The Court also notes that, although there is a factual dispute about whether Bauldry was speeding, compare Henderson Depo. at 51 with Bauldry Decl. at 4—and the Court has accepted Bauldry's account that he was not—whether Bauldry was actually speeding is not the point. The question is whether Henderson had reasonable suspicion to stop Bauldry's car. Henderson's radar

4

"Investigatory traffic stops are akin to the on-the-street encounters addressed in Terry v. Ohio, 392 U.S. 1 (1968). Accordingly, the same objective standard applies: a police officer may conduct an investigatory traffic stop if the officer has 'reasonable suspicion' that a particular person 'has committed, is committing, or is about to commit a crime.'" United States v. Choudhry, 461 F.3d 1097, 1100 (9th Cir. 2006). An officer has reasonable suspicion to stop a vehicle when "specific, articulable facts . . . together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." Id. at 1100 (internal quotation marks omitted).

The reasonable suspicion necessary to justify a stop depends on both the content of information the police possess and its reliability. Alabama v. White, 496 U.S. 325, 330 (1990). The content of the information Tanabe provided was certainly detailed enough to support a police officer's belief that a crime was occurring. Tanabe told Henderson that Bauldry was intoxicated, he accurately identified Bauldry's vehicle and its location, and he told Henderson when the vehicle was leaving the bar. See, e.g., Tanabe Decl. ¶¶ 12–20. To determine whether a tip is sufficiently reliable to support reasonable suspicion, courts are to use a totality of the circumstances test. See Massachusetts v. Upton, 466 U.S. 727, 732 (1984) (per curium). Anonymous tips can sometimes be sufficiently reliable. Compare White, 496 U.S. at 332 (anonymous tip reliable where it contained a range of details, corroborated by officer, and caller predicted driver's future behavior, demonstrating "special familiarity with [driver's] affairs."), with Florida v. J.L., 529 U.S. 266, 271–72 (2000) (noting that an anonymous tip "seldom demonstrates the informant's basis of knowledge"

---

system indicated that Bauldry was speeding (by traveling 35 m.p.h. in a 25 m.p.h. zone). Henderson Depo. at 51. Even if that radar system was ultimately incorrect, Henderson was entitled to rely on it. Cf. San Joaquin Deputy Sheriffs' Assn. v. County of San Joaquin, 898 F. Supp. 2d 1177, 1186 (E.D. Cal. 2012) (noting that speeding is a vehicular violation which gives officer probable cause to stop individual, and discussing whether officer had a basis for believing that individual was speeding); United States v. Cardenas, No. 00-1093 PHX ROS, 2001 WL 687479, at *1, *3 (D. Ariz. June 7, 2001) (holding, where radar measurement showed that van was speeding, that "[p]robable cause exists to stop a vehicle for a speeding violation if the vehicle is exceeding the posted speed limit."); Holland v. King Cty. Adult Detention, No. 12-791 JLR, 2013 WL 3354414, at *11 (W.D. Wash. July 3, 2013) ("[officer] had reasonable, articulable suspicion to stop [individual] on an investigatory traffic stop for speeding based on his observations and the reading of his Radar registering [individual's] vehicle at a speed of 58 mph in a zone marked for 45 mph.").

5

<div style="float:left">United States District Court<br>For the Northern District of California</div>

1  and finding tip insufficient where caller did not explain how he knew about gun and made no
2  prediction about future behavior). In Navarette v. California, 134 S. Ct. 1683, 1686–87
3  (2014), the Supreme Court recently found reliable an anonymous drunk-driving tip from a
4  911 caller who communicated a detailed description of the vehicle, the direction in which the
5  vehicle was traveling, and that the vehicle had run the caller off the road. The Court noted
6  that "the caller necessarily claimed eyewitness knowledge of the alleged dangerous driving"
7  and that there was "reason to think that the caller . . . was telling the truth," as the timeline
8  she described was consistent with the police officer's finding the driver, and the caller used
9  the 911 system. Id. at 1689–90.
10  Tanabe and Henderson argue that if even anonymous tips can be reliable, certainly
11  Tanabe's tip was. Mot. at 6. Indeed, Henderson had reason to believe that Tanabe—an off-
12  duty fellow police officer with whom he had worked and whom he found reliable, and who
13  was at the bar personally observing Bauldry's alcohol consumption—was credible.
14  See Henderson Decl. ¶ 4. Tanabe's tip was corroborated in part when Henderson was able to
15  locate Bauldry's car at roughly the time and location Tanabe provided. Id. ¶ 5. There was
16  thus good "reason to think that [Tanabe] was telling the truth." See Navarette, 134 S. Ct. at
17  1689. "'[V]iewed from the standpoint of an objectively reasonable police officer,'" Tanabe's
18  tip therefore created reasonable suspicion that Bauldry was engaged in criminal activity, and
19  the stop was warranted. See id. at 1690.
20  Bauldry's argument that Tanabe and Henderson nevertheless cannot rely on Tanabe's
21  tip as a basis for the stop relies on a misinterpretation of the law. See Opp'n (dkt. 201) at
22  5–7. Bauldry asserts that an officer must have "seen [the relevant] facts with his own eyes,"
23  seizing on the language in Terry v. Ohio that courts must look to "the specific reasonable
24  inferences which [the officer] is entitled to draw from the facts in light of his experience."
25  Id. (citing Terry v. Ohio, 392 U.S. 1, 27 (1968)). But the tip that Henderson received is part
26  of "his experience." Requiring that an officer have literally seen all of the relevant facts with
27  his own eyes would mean than a tip could never give rise to reasonable suspicion. That is
28  not the law. See generally Navarette, 134 S. Ct. 1683.

6

Relatedly, Bauldry asserts that to arrest someone for a non-felony offense, the crime must have occurred in the officer's presence. Opp'n at 6 (citing Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."); Cal. Penal Code § 836(a)(1) (officer may arrest a person without a warrant when "officer has probable cause to believe that the person to be arrested has committed a public offense in the officer's presence.")).[4] That is the law, but it does not follow that Henderson must have seen Bauldry drink to excess, get into his car, and swerve all over the road in order to stop him. The relevant crime—driving under the influence—occurred in Henderson's presence because Henderson saw Bauldry's car moving. See Johnson v. Dept. of Motor Vehicles, 36 Cal. Ct. App. 4th 1209, 1216 (1995) (explaining in DUI case that "[t]he 'in the presence' requirement necessitates that the officer see the vehicle move."); Mercer v. Dept. of Motor Vehicles, 53 Cal. 3d 753, 769 (1991) (defining presence as officer seeing vehicle move).[5][6]

Accordingly, Henderson had reasonable suspicion for the stop.

**B. Probable Cause for Arrest**

The Court also holds that there was probable cause for Bauldry's arrest.

---

[4] Bauldry incorrectly characterizes this code section as pertaining to when "an officer can make a warrantless stop." See Opp'n at 6.

[5] But see Troppman v. Gourley, 24 Cal. Rptr. 3d 372, 374 (Cal. Ct. App. 2005) (explaining that the California legislature amended the California Vehicle Code in response to Mercer to create an express exception to the presence requirement where evidence may be destroyed by the passage of time); Cal. Vehicle Code § 40300.5 ("In addition to the authority to make an arrest without a warrant pursuant to paragraph (1) of subdivision (a) of Section 836 of the Penal Code, a peace officer may, without a warrant, arrest a person when the officer has reasonable cause to believe that the person had been driving while under the influence of an alcoholic beverage and any drug when any of the following exists: [listing five exceptions]."

[6] Bauldry's further argument that Tanabe and Henderson cannot rely on Tanabe's tip because that tip was not in the police report is not grounded in any law. See Opp'n at 6-7 (citing no authority). Indeed, the law is to the contrary. See Devenpeck v. Alford, 543 U.S. 146, 152–53 (2004) (rejecting notion that probable cause inquiry is confined to the known facts bearing upon the offense actually invoked at the time of arrest, and noting the irrelevance of the officer's state of mind to the probable cause determination).

7

The Fourth Amendment requires that a warrantless arrest be supported by probable cause that a criminal offense has been or is being committed. Devenpeck, 543 U.S. at 152. "In California, an officer has probable cause for a warrantless arrest if the facts known to him would lead a [person] of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that a person is guilty of a crime." Blankenhorn v. City of Orange, 485 F.3d 463, 471 (9th Cir. 2007) (internal quotation marks omitted). "Federal standards are consistent: The test for whether probable cause exists is whether at the moment or arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the petitioner had committed or was committing an offense." Id. (internal quotation marks omitted). Again, "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. . . . That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." Devenpeck, 543 U.S. at 593–94 (internal citations omitted).

Bauldry cannot dispute that, once contacted by Durrer, he conceded that he had consumed alcohol, agreed to undergo field sobriety and breathalyzer tests, and performed poorly on those tests. These facts and circumstances were sufficient to warrant a prudent person to believe that Bauldry was committing the offense of drunk driving. See Blankenhorn, 485 F.3d at 471. Bauldry makes no allegations about Durrer that would undermine the validity of the arrest, nor does he make the arguments about collateral estoppel or entrapment that the Court rejected in the Katz and Aksu Order. See Order Granting in Part Motions for Summary Judgment (Case No. 12-4268) at 9–11.

Because there was both reasonable suspicion to stop Bauldry's car and probable cause to arrest Bauldry for driving under the influence, Tanabe did not violate Bauldry's Fourth Amendment rights. The related conspiracy claim also fails. See Sprewell v. Golden State Warriors, 266 F.3d 979, 992 (9th Cir. 2001) ("to sustain a claim of civil conspiracy, Sprewell must prove that the NBA and the Warriors have committed an underlying tort."). Bauldry's

8

argument that Tanabe and Henderson "are still on the hook for several other torts," Opp'n at 8, misses the point: the conspiracy claim at issue is the one explicitly premised on a violation of the Fourth Amendment (the Second Claim for Relief, see Third Amended Complaint (dkt. 68) ¶ 68); the conspiracy claim based on the Fourteenth Amendment (the Fifth Claim for Relief, see Third Amended Complaint ¶ 70) remains in the case.  The state wrongful arrest claim against Henderson (the Sixth Claim for Relief, see Third Amended Complaint ¶¶ 71–73) also fails, in light of the Court's finding that there was probable cause for the arrest.  See Cal. Penal Code § 847(b) ("There shall be no civil liability on the part of, and no cause of action shall arise against, any peace officer . . . acting within the scope of his or her authority, for false arrest or false imprisonment arising out of any arrest under any of the following circumstances: (1) The arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful.").[7]

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Tanabe and Henderson's Motion for Reconsideration and GRANTS summary judgment as to Bauldry's Fourth Amendment claim, the related civil conspiracy claim, and the state wrongful arrest claim as to Henderson only.

**IT IS SO ORDERED.**

Dated: July 30, 2015

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[7] This claim remains in the case as against Tanabe.  The Court notes that Tanabe and Henderson only urged reconsideration of this claim as to Henderson.  See Mot. at 8 ("Henderson should be granted summary judgment"); Reply (dkt. 202) at 8 (same).